DENKER, ADMR. *v.* LLOYD ET AL.

[No. 17,703. Filed June 9, 1948. Rehearing denied October 1, 1948. Transfer denied October 26, 1948.]

*Stevenson & Kendall,* both of Danville, *Kivett, Chambers, Vernon, & Kivett,* all of Indianapolis, attorneys for appellant.

*Davis, Baltzell, Hartsock, & Dongus,* all of Indianapolis, and *R. Frank Davidson,* of Danville, attorneys for appellees.

CRUMPACKER, J.—This case was commenced and prosecuted by the appellant below on the theory that his decedent, Robert R. Sloan, at the time of his death, was the owner of $416\frac{2}{3}$ shares of preferred stock in the Garfield Court Realty Company, that the corporate existence of said company had expired by operation of law and that, as the duly appointed, qualified and acting administrator of the Robert R. Sloan estate, he is

entitled to have a receiver appointed to liquidate the assets of the corporation, pay its debts and distribute the net proceeds among the shareholders as their interests may appear. The principal defendants were Rhoda M. Lloyd and Marguerite Lloyd who defended on the theory that, at the time of the death of Robert R. Sloan, the Garfield Court Realty Company had no preferred stock outstanding; that the entire issue thereof had long since been retired and never reissued; that when Sloan died they became the owners of all the common stock and as such caused the corporation to take steps resulting in the extension. of its corporate life and the change of its name to Garfield Court Realty Corporation and that no grounds for the appointment of a receiver exists. After the commencement of this action Rhoda M. Lloyd died and Marguerite Lloyd, as administrator of her estate with the will annexed, was substituted as a party defendant. One Brooks H. Lloyd, Garfield Court Realty Company, and Garfield Court Realty Corporation were also named as parties defendant but their interests in this controversy are nominal and our use of the word "appellees" will be understood to refer to the defendants Rhoda M. and Marguerite Lloyd. The trial court found the facts specially, stated conclusions of law thereon unfavorable to the appellant and, over his motion for a new trial, entered judgment that he take nothing.

We are indebted to the appellees for a concise statement of the basic or fundamental question involved in this appeal, which they express as follows: "Does the evidence establish that Robert R. Sloan, at the time of his death, was the owner of preferred stock in the Garfield Court Realty Company with such conclusiveness that the trial court's finding that he was not, is contrary to law?" The solution of this question neces-

sarily involves an examination of the evidence upon which the court based its special findings.

In September, 1938, the corporate structure of the Garfield Court Realty Company consisted of 650 shares of common stock of a par value of $100 each. Its Articles of Incorporation provide for 1250 shares of preferred stock all of which had been issued in May, 1925, and redeemed in March, 1937; the certificates evidencing the same cancelled and attached to their respective stubs, and the remaining blank and unissued certificates perforated on the face of each. Of the common stock Robert R. Sloan owned 648 shares represented by one certificate for 646 shares and two other certificates for one share each which have been mislaid or lost. Of the two remaining shares Rhoda M. Lloyd and Margeurite Lloyd owned one each. Robert R. Sloan was president and treasurer of the corporation and Rhoda M. Lloyd was its secretary. Sloan and the two Lloyds constituted the board of directors. Aside from the Union Trust Company of Indianapolis, who then held a mortgage on the corporation's real estate, no other person or persons had any interest whatever in its assets or affairs.

Rhoda M. Lloyd was a widow and her daughter Marguerite was a teacher in the Indianapolis public schools. They had been life-long friends of Sloan and sometime prior to September, 1938, had taken up residence in his home at his invitation and request. In return they performed all the duties the women members of a family usually do in connection with the maintenance of a household. They took care of Sloan's room as well as their own quarters, mended and laundered his clothes and nursed him when he was sick. He had no wife or direct heirs and his nearest relatives were a number of cousins, to none of whom had he ever

been particularly close. The Garfield Court Realty Company experienced financial difficulties during the economic depression of the 1930's and Sloan, at various times, borrowed money from the Lloyds aggregating something over $8,000 which he used for his private purposes and in the corporation's business. During this period of time Sloan frequently expressed his fondness for the Lloyds, his appreciation for all that they had done for him, and, being without direct heirs, stated that he wanted them to have his property upon his death.

Sloan regarded himself as the owner of the corporation and conducted its affairs about as he pleased and in a very informal manner. Corporate action was frequently taken without authorization by the board of directors and Rhoda M. Lloyd, as secretary, usually signed papers pertaining to corporate business upon Sloan's request and without question. On September 23, 1938, he took the corporation's preferred stockbook to his lawyer and told him he wanted to reissue all the preferred stock in three certificates of 416⅔ shares each, one to himself and one each to the appellees. His lawyer advised him that this could not be done until the board of directors and stockholders had formally met and authorized such action. Sloan however insisted that the certificates be made out in the manner above indicated and his lawyer thereupon took three blank and perforated certificates numbered 218, 219 and 220 from the stockbook and on No. 218 wrote in the name "Robert R. Sloan" as the holder and "Four Hundred Sixteen and Two-thirds (416⅔)" as the number of shares held. The date of redemption was not indicated, as required by the Articles of Incorporation, the corporate seal was not affixed nor was the date of the purported issuance stated. Certificates No. 219

to Marguerite Lloyd and No. 220 to Rhoda M. Lloyd were prepared in the same manner and all three of them were handed to Sloan with instructions to fill in the remaining blanks appropriately after the board of directors and stockholders had met and formally authorized their issuance. Sloan took the three certificates home with him, signed them as president of the corporation and caused Rhoda M. Lloyd to sign them as its secretary. No meeting of the stockholders or directors of the corporation was held and no resolution was submitted to either the stockholders or directors authorizing the reissue of said preferred stock, nor was said proposed reissue ever ratified or approved in any meeting of the stockholders or directors. No money or other consideration was paid to the corporation for the issuance of this stock nor was the corporate seal affixed to the certificates, the redemption date inserted nor the date of the purported issuance indicated in any manner on the certificates themselves. When Sloan procurred the execution of the three certificates by Rhoda M. Lloyd, as secretary of the corporation, she asked him why they were perforated. He said he did not know; his lawyer had advised him against their issuance but he had insisted upon it. Without offering to deliver certificates Nos. 219 and 220 to the Lloyds he placed all three of them in a bureau drawer in his private quarters where they remained until they were removed for use as exhibits in a law suit in April, 1940. There is evidence suggesting that Sloan's purpose in having the preferred stock reissued in the manner above indicated was to settle his obligations, legal and moral, to the Lloyds.

Six days later, on September 29, 1938, Sloan caused the entire common stock issue to be transferred to himself, Rhoda M. Lloyd and Marguerite Lloyd as "joint

tenants with right of survivorship." He took the stock certificates representing such transfer home, showed them to the Lloyds, explained the joint ownership and right of survivorship features thereof and informed them that this was the way he proposed to discharge his legal and moral obligations to them. It is undisputed that this arrangement was agreeable and satisfactory to all concerned. There is testimony and other evidence in the record tending to prove that prior to Sloan's death the Lloyds, by speech and conduct, recognized the existence of preferred stock outstanding in Sloan's name. We do not regard this as substantive evidence tending to prove the fact. At most it merely shows a prior position in the matter inconsistent with the present attitude of the appellees and was important to the trial court only on the question of estoppel and its impeaching effect on the witnesses involved.

Sloan and Rhoda M. Lloyd, both being dead, it is agreed that Marguerite Lloyd, through right of survivorship, became the owner of all the common stock in the Garfield Court Realty Company and that the same has since been transferred so that 645 shares now belong to Marguerite Lloyd, three shares to Marguerite Lloyd and Brooks H. Lloyd as joint tenants with right of survivorship and two shares to Austin J. Edwards.

The appellant contends that the above facts compel the conclusion that Robert R. Sloan was the owner of 416⅔ shares of preferred stock in the Garfield Court Realty Company at the time of his death and that the court's decree should have established such ownership and the validity of the stock so held. Their position in support of this contention is two-fold. First they say that the Garfield Court

Realty Company had charter power to reissue the preferred stock in question. That its duly elected and qualified officers issued it with the knowledge and acquiescence of the board of directors and all the common stockholders and even though it was done without the formality of a directors' or stockholders' meeting the Lloyds, as common stockholders who participated and acquiesced in its issuance, are now estopped to deny its validity. We have no quarrel with the legal principle involved in this contention but the obstacle in the way of its compulsory application in the present case lies in the fact that the burden of proving a factual situation making the principle operative lay upon the appellant and the evidence is open to a reasonable inference that the Lloyds did not acquiesce in its issuance and thereupon Sloan abandoned his purpose to do so.

Second, the appellant asserts that the issuance of the preferred and common stock in September, 1938, are parts of one transaction for the purpose of adjusting rights between the parties and under such circumstances the appellees cannot keep and affirm the issuance of the common stock and avoid the issuance of the preferred stock. Assuming without deciding that the corporation had charter power to reissue its preferred stock after its redemption, we have no doubt that had the common stock been transferred to the Lloyds as joint owners with right of survivorship upon the express condition that they acquiesce in the reissuance of such preferred stock and accept a part thereof as consideration for an adjustment of their mutual rights and obligations, there would be merit in the appellant's position. The court, however, made no such finding and there is no evidence in the record which would support the same if made. We have

examined the evidence on this subject with care and find the situation to be as follows: Sloan decided to reissue the preferred stock without consulting the Lloyds or informing them of his purpose. When he brought the certificates, purporting to evidence its reissue, home and showed them to the Lloyds, the transfer of common stock to their joint ownership was not mentioned by anybody. Six days later he met with the Lloyds and showed them the certificates representing the transfer of the common stock to the joint ownership of himself and them and suggested their acceptance of such ownership as full payment of his debts and obligations to them. This was the first intimation the Lloyds had of any such plan of settlement and during its discussion not one word was said concerning the purported issue of preferred stock. From such evidence the trial court apparently could find no inference that the two transactions were tied up together and that the acceptance of one proposition was a condition to the acceptance of the other. On the contrary the court evidently concluded, and we think justifiably so, that the offer of preferred stock as a means of settlement was unacceptable to the Lloyds and Sloan thereupon offered them the second proposition, which was satisfactory.

The appellant further complains of special finding No. 40 which reads as follows: "At the time of the death of Robert R. Sloan, there was no preferred stock of Garfield Court Realty Company outstanding and all its common stock, to-wit: 650 shares, upon his death, was the property of Rhoda M. Lloyd and Marguerite Lloyd as joint tenants with right of survivorship." The appellant says that this finding is the very heart of the appellees' case and being a conclusion of law cast among the findings of fact, it must be dis-

regarded and without it the appellees must fail. With this we cannot agree. The appellees were under no burden to prove facts to support the conclusion reached in finding No. 40 even though it be one of law and therefore should be disregarded. The burden rested upon the appellant to prove the legal existence of preferred stock or facts and circumstances which would estop the appellees in denying its existence. In our opinion the evidence does not compel a decision to either effect nor do the facts actually found by the court require such a conclusion as a matter of law.

Concerning the question of estoppel the appellant lays great stress upon the fact that, in a law suit against the company in 1940, the appellee Marguerite Lloyd testified that there was preferred stock outstanding and that she was the owner of $\frac{1}{3}$ thereof. Such testimony, weighed against the circumstances under which it was given and the witness' present explanation thereof, evidently convinced the court that it was not sufficient to work an estoppel in equity and good conscience. As heretofore stated the burden of proving an estoppel was on the appellant and we cannot say, as a matter of law, that the evidence pertaining thereto compels such conclusion.

The situation revealed by the whole record convinces us that the case was fairly tried and, weighed in the scales of what Robert R. Sloan wanted to accomplish by the entire transaction, a just and correct result was reached.

Judgment affirmed.

Royse, C. J., not participating.

NOTE.—Reported in 79 N. E. 2d 658.